CITY OF DURHAM, A MUNICIPAL CORPORATION v. PUBLIC SERVICE COMPANY OF NORTH CAROLINA, INC.

(Filed 10 July 1962.)

**1. Injunctions § 13—**

Upon the hearing of an order to show cause why a temporary restraining order should not be issued pending the determination of the action on the merits, the ultimate merits of the action are not before the court, and, while the court, in treating the complaint as an affidavit, must consider the facts alleged in determining in its sound discretion whether interlocutory injunction should be issued, an adjudication of the merits contained in the order for temporary injunctive relief must be stricken.

**2. Appeal and Error § 50—**

Upon defendant's appeal from an order granting in part plaintiff's prayer for an interlocutory injunction, the sole question on appeal is whether there was error in enjoining the particular acts specified in the order pending the hearing on the merits.

**3. Same—**

On appeal from an order granting a temporary injunction, the Supreme Court has the power to find the facts.

**4. Injunctions § 3—**

Ordinarily, an injunction will not lie where there is a full, adequate and complete remedy at law which is as practical and efficient as is the equitable remedy.

**5. Injunctions § 13— Injunction should not issue when defendant has filed bond providing complete and efficient remedy if plaintiff prevails on merits.**

Where a public service Company has filed bond with the Utilities Commission pursuant to G.S. 62-71 and obtained authority from the Commission to put into effect an increase in rates in the territory served by it, a municipal corporation is not entitled to a temporary order restraining the service company from putting the rates into effect within the municipality upon the assertion that the increase in rates was contrary to contractual provisions in the franchise granted the public service company by the city, since an adequate and efficient remedy is afforded the city and its inhabitants by suit upon the bond in the event the increase in rate was not justified in law, and therefore the municipality could not suffer irreparable injury.

**6. Injunctions § 1—**

A party may not be enjoined from doing what it has already done.

**7. Appeal and Error § 19—**

An assignment of error should present the asserted error without the necessity of going beyond the assignment itself.

APPEAL by defendant from *Mintz, J.,* July 1961 Term of DURHAM. The complaint alleges in substance:

On 19 November 1951 the City Council of the city of Durham duly adopted and passed on final reading an ordinance granting a natural gas franchise in the city to the defendant. Defendant accepted the franchise on 30 November 1951.

Section ten of the franchise is as follows:

"Section 10. It is recognized that under present law the North Carolina Utilities Commission is vested with legal authority to supervise, fix, and change rates and charges authorized to be charged by the COMPANY to consumers of natural gas, but it is also recognized by both the COMPANY and the CITY that matters involving rate charges and changes are peculiarly local in their application and effect and that the CITY should be afforded access to all information and records and data of the COMPANY which would have any bearing upon the reasonableness of rates and charges in order to determine to its own satisfaction whether such rates and the proposed revised rates are or would, if allowed, be reasonable, and the parties should undertake to reach a mutual understanding as to rates before any action is requested of the Utilities Commission. To that end, the COMPANY shall not file any application or petition or request in any form with the North Carolina Utilities Commission, or any other regulatory body vested by law with authority and jurisdiction to authorize a change of rates and charges, for an increase in or authority to increase rates and charges, or for any revision or change which would have the effect of increasing the rates and prices to be paid to the COMPANY by consumers of natural gas in this CITY, unless and until said COMPANY shall have, at least 30 days prior to the filing of such request, petition, or application, filed with the City Manager of the CITY a written notice stating that it intends to make such application for a rate increase and stating in such written notice in a clear and definite way the amount of such increase of rate to be requested as applied to each class of consumer use, the reasons upon which such request for increased rates is to be made and the data supporting said reasons for such increased rates, the value of the plant and properties of the COMPANY located in or supplying service to the Durham area, set out in adequate detail to permit the CITY to reasonably spot check values, separate from the value of all plant and property of the COMPANY in its entire system, the gross income and expenditures of the COMPANY for each of the three immediately pre-

ceding years from the operations of its plant and business located
in or supplying service to the Durham area, separated from the
income and expenditures for the remainder of its system, and said
COMPANY shall, in good faith, consult, confer and negotiate
with the CITY in an effort to first determine to the mutual satis-
faction of the CITY and the COMPANY whether a revision of
such rates should actually be made and, if so, in what amount
and to what extent; and, in addition, the CITY shall have the
right and privilege, either by its own regular employees or by
and through others employed and paid by the CITY for such pur-
poses, to inspect and examine all records, books, papers, properties
and interests of the COMPANY and make computations, analy-
ses, audits, reports, schedules, charges for depreciation, valuations,
and receive and compile any and all other information as may be
in the possession or control of said COMPANY, and the COM-
PANY shall make all of said records and properties available to
the CITY and its duly authorized representatives at all times
upon request made by said CITY in writing through its City
Manager or any other person authorized by the Governing Body,
and shall cooperate with the CITY and its representatives in all
reasonable ways in assisting the CITY and representatives to
ascertain the true facts and conditions.

"(b) If, during the term of this franchise, the cost to the COM-
PANY for natural gas is increased or decreased above or below
the cost as now or hereafter may from time to time be established
by the Federal Power Commission, the COMPANY shall im-
mediately notify the CITY of Durham in writing of such change."

In disregard of the provisions of section ten of the franchise, during
December 1959 defendant filed with the North Carolina Utilities
Commission an application for an increase in rates for the furnishing
of natural gas to its consumers, without notifying plaintiff, or its city
manager. Plaintiff did not learn of the filing of this application, until
the newspapers stated the president of defendant had testified before
the Utilities Commission in support of its application for increased
rates. After receiving this information plaintiff on 18 December 1959
wrote and sent a letter to defendant stating it had not complied with
section ten of the franchise, and requesting information what, if any-
thing, defendant proposed to do to comply with the terms of this
section.

By letter dated 28 December 1959 defendant wrote plaintiff that it
was not its intention to disregard the provisions of the franchise in fil-
ing with the Utilities Commission its application for a rate increase.

Plaintiff learned from the newspapers that defendant on 31 May 1961, in Docket No. G-5, Sub 38, had filed another application with the Utilities Commission for an increase in rates, and for authority to put into effect certain rate schedules referred to in the application. Defendant, before filing a second application for a rate increase, did not file with its city manager any notice that it intended to make an application for a rate increase, setting forth in the notice the information required by section ten of the franchise, and this constitutes a breach of this section of the franchise.

By reason of defendant's breach of the provisions of section ten of the franchise, plaintiff is not in a position to determine whether, in its opinion, defendant's application for an increase in rates is, or is not, justified, and thereby to determine whether to oppose or not the application.

Unless restrained by the court, defendant will increase its rates and charges to its consumers in the city of Durham by posting a bond with the Utilities Commission, and thereby collecting such increased rates from its customers of natural gas in the city of Durham without a formal or final order by the Utilities Commission based on the merits, as a result of which the plaintiff and the gas consumers in the city will suffer irreparable injury and damages for which there is no adequate remedy at law.

Plaintiff has no adequate remedy at law, and its only effective remedy is for a court of equity to require specific performance of the terms and provisions of the franchise.

Wherefore, plaintiff prays:

One. That judgment be rendered requiring defendant to specifically perform, carry out, and abide by all of the obligations and things provided in the franchise to be done by it.

Two. That defendant be ordered to withdraw from the Utilities Commission its application for a rate increase denominated Docket No. G-5, Sub 38, in the records of the Utilities Commission, including all papers, petitions, motions, and proceedings of every kind in connection with the application.

Three. That defendant be permanently enjoined during the life of the franchise from filing with the Utilities Commission any application, petition or request for a rate increase, unless and until it complies with the requirements of section ten of the franchise.

Four. That the court enter an order requiring defendant to appear at a stated time, and show cause, if any it can, why the relief prayed for should not be granted.

On 26 June 1961 Judge Williams entered an order for defendant to appear at a stated time and "show cause, if any, why the temporary

restraining order or orders should not be made permanent." This language is inaccurate, for, so far as the record before us discloses, no temporary order had issued. Further, the record shows the complaint was verified the day Judge Williams issued his show cause order.

The show cause order came on to be heard before Judge Mintz, and was heard by him on the complaint treated as an affidavit, on the franchise, on the application and exhibits attached thereto filed by defendant with the Utilities Commission in Docket No. G-5, Sub 38, the orders, reply and undertaking filed with and entered by the Utilities Commission in Docket No. G-5, Sub 38, on two affidavits filed by plaintiff, and two affidavits by the persident of defendant filed by it. Judge Mintz entered what he terms an "order and judgment."

This is a summary of Judge Mintz's findings of fact, so far as relevant to this appeal:

Defendant is a public utility corporation authorized to operate a natural gas distribution system in Durham and other cities in the State of North Carolina, for which it has obtained certificates of convenience and necessity, and it does operate such a system. Defendant has a natural gas franchise from the city of Durham for a period of thirty years from November 1951. Section nineteen of the franchise provides, in part, that during the period of the franchise the books and records of defendant shall contain accurate records of defendant's property in Durham, the estimated and actual accrued depreciation thereof, and the revenues and expenses resulting from its operations in Durham, according to an accounting system which will show such information separate and apart from the other properties, revenues, and expenses of the entire system operated by defendant. Then follows a summary of the provisions of section ten of the franchise, which we do not set forth, because this section is set forth verbatim above. The provisions of sections ten and nineteen of the franchise are material and of value to the city of Durham for the purposes stated in those sections. During December 1959 defendant filed with the Utilities Commission an application for an increase in rates without notifying plaintiff, or its city manager, of its intention to file such application, and in breach of the franchise's provisions. On 31 May 1961 defendant filed another application with the State Utilities Commission for another increase in its rates without any notice to plaintiff, or its city manager, and without any effort by it to comply with the provisions of section ten of the franchise. This second application is denominated Docket No. G-5, Sub 38, in the records of the Commission. On 5 June 1961 the Commission entered an order suspending the use of the proposed rate schedule pending an investigation and hearing on 24 October 1961. On 19 June 1961 defendant filed with the Commission a

reply to its order, and an undertaking, requesting the Commission under the provisions of G.S. 62-71 to modify its previous order so as to permit defendant to put its proposed rate schedule into effect 1 July 1961. The Commission amended its order as requested, and defendant began billing its customers on its proposed rate schedule as of 1 July 1961, notwithstanding plaintiff's action was instituted 26 June 1961. Defendant does not keep books and records as required by sections ten and nineteen of its franchise, and plaintiff has not waived or modified the requirements of those sections.

Judge Mintz's findings of fact ten and eleven are set forth verbatim:

"10. In or about the first week of June, 1961, and immediately following notice referred to in paragraph 8, the Company delivered to the City a copy of its application to the North Carolina Utilities Commission filed May 31, 1961, and all data and documents filed therewith. During the pendency of this action, and during hearings in Durham on July 17, 1961, and Raleigh on July 27, 1961, and prior to or following 'observations' made by the Court the Company announced that it could and would furnish certain information, indicating a schedule it could maintain for the delivery of the same, the last item of which was promised on August 31, 1961, and thereafter the Company delivered to the City letters directed to the City Manager, Honorable George Aull, containing certain data. Attached to the letter of August 31, 1961, and delivered therewith to the City Manager was a report of the American Appraisal Company dated August 30, 1961, with reference to the properties of the Company in the City of Durham, all of which letters and data, including the said report, have been filed with the Court as part of the record in this proceeding. Thereby, as of the date of the entry of this Order, the Company has in the opinion of the Court, and the Court so finds, furnished to the City the information specified by Section 10 of the Franchise Ordinance, and the Court is of the opinion that negotiations between the parties under provision of Section 10 at this stage are impracticable, and would probably have the effect of pre-empting the province reserved for the Commission.

"11. As of the date of the entry of this order the Company has not complied with the provisions of Section 19 of the Franchise Ordinance with reference to the keeping of books and records to show the Company's property in Durham, the estimated and actual accrued depreciation thereof, and the revenues and expenses resulting from the operations in Durham under this franchise ordinance, separate and apart from the other properties,

revenues and expenses of the entire system operated by the Company, and the Court is of the opinion, and so finds, that the immediate installation and maintenance of such records at this time would be an imposition of the Company when compared to any valid use the City could make of such records."

We summarize the Judge's conclusions of law, so far as relevant to this appeal:

The court has jurisdiction to hear and determine the matters set forth in the complaint. The provisions of sections ten and nineteen of the franchise are valid and binding obligations upon the parties, and plaintiff has not by conduct or acquiescence waived their performance by defendant. Defendant has breached the said provisions by failing to keep its records as required by sections ten and nineteen of the franchise, and by failing to furnish information to plaintiff, or its city manager, before filing an application for increase of rates with the Utilities Commission, as required by section ten of the franchise. The breach by defendant of section ten of the franchise has caused plaintiff to suffer irreparable damage for which it has no adequate remedy at law. Plaintiff is entitled to have a suspension of the proposed rates on gas sold and delivered within the city of Durham for thirty days following a final and complete compliance by defendant with respect to the information required by section ten of the franchise, which information was furnished by defendant in substantial compliance with said section on 31 August 1961.

Based upon his findings of fact and conclusions of law Judge Mintz entered "an order and judgment" adjudging and decreeing as follows:

"1. That the defendant, Public Service Company of North Carolina, Inc., is hereby enjoined and restrained from the collection of any increased rates and charges as shown on schedule filed in Docket No. G-5, Sub 38, for natural gas furnished and to be furnished to consumers in the City of Durham during the period between August 1, 1961, and October 1, 1961.

"2. Except as provided in the next preceding paragraph, nothing in this order shall be construed to enjoin or restrain the defendant from proceeding with its application to the North Carolina Utilities Commission filed May 30, 1961, in the proceeding designated by that Commission as Docket No. G-5, Sub 38, or from complying with any order of the North Carolina Utilities Commission entered therein, including the order therein entered by the Commission on June 23, 1961, or from charging and collecting for its services any rate or rates approved, authorized or ordered by the North Carolina Utilities Commission; and nothing in this order

shall be construed to enjoin or restrain the defendant from charging and collecting from any person, firm or corporation for gas or any other service supplied to him or it by the defendant at any location outside the corporate limits of the City of Durham the rates and charges put in effect therefor by the defendant on July 1, 1961, pursuant to the order of the North Carolina Utilities Commission dated June 23, 1961, or pursuant to any other order of the said Commission heretofore or hereafter issued.

"3. The motion of the plaintiff that the defendant be ordered and required to withdraw its application filed with the North Carolina Utilities Commission on May 31, 1961, in the proceeding designated by the Commission Docket No. G-5, Sub 38, and all other papers, petitions, motions and proceedings of every kind in connection with the said matter is hereby denied.

"4. The motion of the plaintiff that the defendant be enjoined and restrained from putting into effect any increase in the rates charged by it immediately prior to the first day of July, 1961, is hereby denied with respect to the charging of such increase in rates to any person, firm or corporation for gas or other service to him or it at any location outside the corporate limits of the City of Durham.

"5. On bills rendered by it on and after October 1, 1961, the defendant is permitted to charge to persons, firms and corporations for gas or other service to them at locations within the City of Durham, the rates authorized by the order of the North Carolina Utilities Commission dated June 23, 1961, in its proceeding entitled Docket No. G-5, Sub 38, subject to any further order or orders lawfully issued by the North Carolina Utilities Commission in that or any subsequent proceeding.

"6. Except as hereinabove provided the relief prayed for by the plaintiff prior to the final hearing and determination of this action is denied.

"7. As a condition precedent to the taking effect of this order, the Clerk shall take from the plaintiff a written undertaking, with sufficient sureties to be justified before and approved by the Clerk, in the amount of $1,500 to the effect that the plaintiff will pay to the defendant such damages, not exceeding $1,500 as it sustains by reason of the issuance of this order if, upon the final hearing of this action, the Court decides that the plaintiff was not entitled to the issuance of this order.

"8. This cause is retained for trial after the filing of the defendant's answer to the complaint."

From this "order and judgment" defendant appeals to the Supreme Court.

*Bryant, Lipton, Bryant & Battle and Lake, Boyce & Lake by I. Beverly Lake for defendant appellant.*
*Claude V. Jones for plaintiff appellee.*

PARKER, J. Defendant has not, so far as this record discloses, filed an answer, and yet two-thirds of its brief is taken up with a discussion of what would seem from the briefs to be the ultimate issues when it files its answer, and the answers to which issues will dispose of the case. Defendant in its brief discusses these questions under two headings, which it entitles as follows: One. "The provision in section 10 of the franchise limiting the defendant's right to apply to the Utilities Commission for authority to increase its rates is beyond the authority of the city and is not an enforceable provision." Two. "Section 19 of the franchise ordinance is unreasonable and unenforceable." A large part of plaintiff's brief discusses the same questions.

Plaintiff states in its brief: "The attention of the Court is called to the fact that no Answer has yet been filed, and, therefore, the pleadings do not set up any contention that sections 10 and 19 are unreasonable or for other reasons unenforceable. In the event the defendant ever files an Answer and makes this contention, it is the purpose of the City to reply and plead Waiver and Estoppel."

The above questions do not properly arise on this appeal. All the pleadings have not been filed and the aforesaid questions discussed in the briefs, if they arise on the pleadings when finally filed, must await a final hearing on the merits. "While equity does not permit the judge who hears the application (for an interlocutory injunction) to decide the cause on the merits, it does require him to exercise a sound discretion in determining whether an interlocutory injunction should be granted or refused." *Huskins v. Hospital*, 238 N.C. 357, 78 S.E. 2d 116. Judge Mintz apparently recognized this for the last part of his "order and judgment" is "this cause is retained for trial after the filing of the defendant's answer to the complaint." The sole question before us on this appeal is whether or not Judge Mintz erred in granting the temporary injunction enjoining defendant "from the collection of any increased rates and charges as shown on schedule filed in Docket No. G-5, Sub 38, for natural gas furnished and to be furnished to consumers in the City of Durham during the period between August 1, 1961, and October 1, 1961," because defendant is not enjoined from doing anything else. *Service Co. v. Shelby*, 252 N.C. 816, 115

S.E. 2d 12; *Conference v. Creech* and *Teasley v. Creech and Miles,* 256 N.C. 128, 123 S.E. 2d 619.

Acting pursuant to the authority vested in us to find the facts in respect to an interlocutory injunction, *Huskins v. Hospital, supra,* we find the following facts, which amplify and clarify Judge Mintz's findings of fact:

On 31 May 1961 defendant acting under the provisions of G.S. 62-71, and without giving any notice to plaintiff, or its city manager, filed with the Utilities Commission a schedule of increased rates applicable to the entire territory served by it to become effective on all bills rendered by it on and after 1 July 1961, thus giving to the Commission the thirty days' notice required by the statute. This proceeding is designated Docket No. G-5, Sub 38, in the records of the Commission. On 5 June 1961 the Commission, acting under the provisions of G.S. 62-71, issued an order suspending the putting into effect of increased rates by defendant on 1 July 1961 until 28 September 1961, unless authorized by the Commission, and ordering a hearing of defendant's schedule of increased rates on 24 October 1961.

A few days after the rendition of the Commission's suspension order, defendant, pursuant to Rule 15 (3) of the Rules of Practice and Procedure before the Commission, filed a reply to the suspension order stating that it has, pursuant to the provisions of G.S. 62-71, this day filed with the clerk of the Commission an undertaking under its corporate seal, and praying that the Commission modify its order of 5 June 1961, so as to eliminate therefrom the provision suspending the putting into effect of its increased rates on 1 July 1961. The material part of the undertaking is:

"(1) If, as a result of the above mentioned hearing, the Commission enters its order lawfully finding any rate for any class of service described in any of the said proposed schedules of rates to be excessive, and lawfully fixing a lower rate to be charged for such service and directing Public Service to refund to its customers the excess of payments made by them pursuant to such schedule over the amounts which would have been paid by such customers had the rate so fixed by the Commission been applied, Public Service will make such refund to each such customer within such time and in such manner as the Commission shall prescribe by its order, together with interest thereon at six per cent per annum from the dates of the collections by Public Service of such excess amounts."

The Commission on 23 June 1961 entered an order as follows:

"Public Service Company of North Carolina, Inc. has filed with the North Carolina Utilities Commission its undertaking and assurances in compliance with G.S. 62-71 in order to put into effect the increased rates which it filed on May 31, 1961, to be effective on all bills rendered on and after July 1, 1961, which were suspended by the Commission on June 5, 1961.

"It is the opinion of the Commission that said undertaking to refund the excess, if any, of the increased rates over the rates finally approved to be put into effect by Public Service Company of North Carolina, Inc. to the persons who may become entitled thereto is a satisfactory arrangement for the protection of the parties involved and complies with the requirements of G.S. 62-71.

"IT IS THEREFORE ORDERED That said undertaking of Public Service Company of North Carolina, Inc. constitutes satisfactory arrangements for the protection of the parties' interest, and complies with G.S. 62-71 and said undertaking is hereby approved for the purpose of and in order that Public Service Company of North Carolina, Inc. may properly put into effect the aforesaid rates, pursuant to G.S. 62-71 to be effective as of the date specified in said undertaking of Public Service Company of North Carolina, Inc."

Pursuant to the provisions of G.S. 62-71, and the order of the Commission, defendant on 1 July 1961 put into effect its proposed increased rates throughout the entire area served by it.

G.S. 62-71 provides this remedy in respect to the undertaking under seal of defendant:

"* * * Provided, and notwithstanding any such order of suspension, the public utility may put such suspended rate or rates into effect on the date when it or they would have become effective, if not so suspended, by filing with the Commission a bond in a reasonable amount approved by the Commission, with sureties approved by the Commission, conditioned upon the refund, in a manner to be prescribed by order of the Commission to the persons entitled thereto of the amount of the excess and interest at the rate of six per cent (6%) per annum from the date that such rates were put into effect, if the rate or rates so put into effect are finally determined to be excessive; or there may be substituted for such bond, other arrangements satisfactory to the Commission for the protection of the parties interested. If the public utility fails to make refund within thirty (30) days after such final determination any person entitled to such refund may sue there-

for, in any court of this State of competent jurisdiction and be entitled to recover, in addition to the amount of the refund due, all court costs, but no suit may be maintained for that purpose unless instituted within two years after such final determination. Any number of persons entitled to such refund may join as plaintiffs and recover their several claims in a single action; in which action the court shall render a judgment severally for each plaintiff as his interest may appear."

It would seem unquestionable that Judge Mintz in enjoining defendant from collecting from its customers in the city of Durham any increased rates between 1 August 1961 and 1 October 1961 acted under the provisions of section ten of the franchise to the effect that defendant shall not apply to the Commission for increased rates unless and until the defendant, at least 30 days prior to the filing of such application, shall have filed with the city manager of plaintiff a written notice setting forth the matters and things required by the provisions of that section, and that defendant did not furnish plaintiff that information until 31 August 1961.

In *Branch v. Board of Education,* 230 N.C. 505, 53 S.E. 2d 455, the Court said: "However, it must be borne in mind that the proceedings on the show cause order, including the findings of fact, are significant only with respect to the immediate issue—whether the order should be continued to the hearing or dissolved; and the findings of fact are not binding on the court upon the final hearing."

Ordinarily, an injunction will not be granted where there is a full, adequate and complete remedy at law, which is as practical and efficient as is the equitable remedy. *In re Davis,* 248 N.C. 423, 103 S.E. 2d 503; *Cotton Mills Co. v. Duplan Corp.,* 245 N.C. 496, 96 S.E. 2d 267; *Armstrong v. Armstrong,* 230 N.C. 201, 52 S.E. 2d 362; *Clinton v. Ross,* 226 N.C. 682, 40 S.E. 2d 593; *Whitford v. Bank,* 207 N.C. 229, 176 S.E. 740; 43 C.J.S., Injunctions, pp. 450-453.

Defendant, as authorized by the provisions of G.S. 62-71, and by order of the Commission, put into effect on 1 July 1961 increased rates for its customers in the city of Durham and throughout the entire area served by it. Judge Mintz, under such circumstances, should not have enjoined defendant from collecting such increased rates as shown on schedule filed with the Commission in Docket No. G-5, Sub 38, for natural gas furnished and to be furnished to consumers in the city of Durham during the period between 1 August 1961 and 1 October 1961, for the reason that if it should finally be determined by the Commission that such increased rates put into effect by defendant on 1 July 1961 were excessive, then the obligations of the undertaking or bond filed by

DURHAM *v.* PUBLIC SERVICE CO.

defendant with the Commission, and the provisions of G.S. 62-71, giving plaintiff and any customers of defendant in the city of Durham an adequate and complete remedy at law to recover from defendant such excess amount or amounts paid by it or them with interest at the rate of 6% per annum from the date that such excess rates were put into effect and paid by it or them, furnish it and them full, adequate and complete relief, which is as practical and efficient as is the equitable remedy of an injunction. Plaintiff could hardly regard such payments with an adequate and complete legal remedy to recover back any excess amount paid as an irreparable injury. *Loose-Wiles Biscuit Co. v. Sanford,* 200 N.C. 467, 157 S.E. 432. Judge Mintz's order enjoining defendant "from the collection of any increased rates and charges as shown on schedule filed in Docket No. G-5, Sub 38, for natural gas furnished and to be furnished to consumers in the city of Durham during the period between August 1, 1961, and October 1, 1961," was improvidently entered, is error, and is reversed.

Further, Judge Mintz's "order and judgment" enjoining defendant from collecting the increased rates from its customers in the city of Durham between 1 August 1961 and 1 October 1961 was signed 29 September 1961. Though the record does not show whether defendant had collected any increased rates put into effect 1 July 1961 from its customers in the city of Durham during the period between 1 August 1961 and 1 October 1961, it would seem reasonable to assume that it had. If so, Judge Mintz enjoined a *fait accompli,* so far as any collections had been made. A preventive injunction cannot be used to undo what has been done. *Jackson v. Jernigan,* 216 N.C. 401, 5 S.E. 2d 143.

For reasons stated above, Judge Mintz was in error in making the following conclusions of law: The breach by defendant of section ten of the franchise has caused plaintiff to suffer irreparable damage for which it has no adequate remedy at law. Plaintiff is entitled to have a suspension of the proposed rates on gas sold and delivered within the city of Durham for thirty days following a final and complete compliance by defendant with respect to the information required by section ten of the franchise.

As we have said above, defendant, as appears from its argument in over two-thirds of its brief, is seeking here to have the provisions of sections ten and nineteen of the franchise adjudged unreasonable and unenforceable, though, so far as this record shows it has filed no answer raising such issues or questions of law. It seems certain from its brief that it will raise such ultimate issues or questions of law, when and if it answers. Plaintiff's counsel in oral argument before us said he brought this action to see if the provisions of these sections were valid.

"The granting or denying of a temporary injunction does not involve a determination of the merits, and the decision should not be made in reference to matters which will come up for consideration at such hearing." 28 Am. Jur., Injunctions, sec. 278, p. 790. To the same effect 43 C.J.S., Injunctions, sec. 2.

Judge Mintz went too far in the hearing on a show cause order as to whether or not an interlocutory order should be granted in making conclusions of law to the effect that the provisions of sections ten and nineteen of the franchise are valid and binding obligations upon the parties, and that plaintiff has not by conduct or acquiescence waived their performance by defendant, thereby deciding what would certainly seem to be the ultimate issues or questions of law upon the merits. These conclusions of law will be vacated. *Huskins v. Hospital, supra.*

It is to be understood that nothing herein said shall be construed as the expression of an opinion as to whether or not the provisions of sections ten and nineteen of the franchise are valid and enforceable. These are matters for the Superior Court on the final hearing when all the pleadings have been filed, if such pleadings raise such issues or questions of law.

Our task in writing this opinion has been made laborious by the fact that the assignments of error do not comply with our rules of practice. This is typical of all the assignments of error, except the one to the judgment:

"DEFENDANT'S ASSIGNMENT OF ERROR #5:
"The defendant excepts to Conclusion of Law #2 contained in the judgment and to the Court's including the said conclusion of law in its judgment and basing its judgment thereon. This is Defendant's EXCEPTION #5 (R. pp. 30 and 33.)"

These assignments of error have compelled us to go beyond them on a voyage through the record to find out what they refer to. This we well might have refused to do. *Nichols v. McFarland,* 249 N.C. 125, 105 S.E. 2d 294.

Judge Mintz's "order and judgment" enjoins defendant only in respect to what we have discussed above. With the exception of the errors above set forth, the "order and judgment" will not be disturbed.

Error in part.

Affirmed in part.