PELHAM REALTY CORPORATION AND MODELLE SCISM v. THE BOARD OF TRANSPORTATION OF THE STATE OF NORTH CAROLINA

———

DEPARTMENT OF TRANSPORTATION v. PELHAM REALTY CORPORATION

No. 120

(Filed 8 July 1981)

1. **Eminent Domain § 7.7 — condemnation proceeding — failure of landowner to file answer — stipulations**

   Plaintiff landowners' failure to answer a proceeding filed by the Board of Transportation to condemn property for an access road was not a fatal defect where plaintiffs filed an independent action against the Board seeking a permanent injunction against the construction of the access road, and the parties stipulated that the court ruling in plaintiffs' independent action would be applicable to the Board's condemnation action and that the ruling would resolve issues in the condemnation action concerning public use and public purpose.

2. **Eminent Domain § 7.8; Injunctions § 2 — injunction against condemnation proceeding — adequate remedy at law**

   Plaintiff landowners were not entitled to an injunction restraining the Board of Transportation from condemning plaintiffs' land for an access road on the ground that the road would not serve a public purpose since the ground of objection is one which plaintiffs may assert as a defense in the condemnation proceeding itself.

Realty Corp. v. Bd. of Transportation

**3. Eminent Domain § 3.2— taking of property for service road**

 Where the upgrading of a highway from a two-lane, unlimited access highway to a multi-lane, limited access expressway will deny a quarry owner access to its property from the highway, an access road to the quarry owner's property proposed by the Board of Transportation to be located a substantial distance from the expressway was a "service road" authorized by G.S. 136-89.55, and the Board of Transportation did not abuse its discretion under the circumstances of this case in deciding to provide access to the quarry owner's property by such a service road rather than by a right-of-way adjacent to the expressway.

**4. Eminent Domain § 3.2— taking of property for service road—public purpose**

 An exercise of the power of condemnation by the Board of Transportation to acquire a right-of-way for a service road to a quarry owner's property was for a public purpose where the owner had access to its quarry at three points along a two-lane, unlimited access highway; when the highway is upgraded to a multi-lane, limited access expressway, the owner will have access to its quarry from Virginia but will no longer have access in North Carolina; the quarry property is effectively landlocked because it is bounded on the west by the expressway, on the north by the State of Virginia, and on the south and east by private property; and the service road will also provide access to property south of the quarry.

ON discretionary review of the decision of the North Carolina Court of Appeals reported at 50 N.C. App. 106, 272 S.E. 2d 777 (1980), and the unpublished opinion of the Court of Appeals reported at 50 N.C. App. 212, 273 S.E. 2d 336 (1980), reversing judgment of *Long, J.,* entered 6 December 1979 in CASWELL Superior Court.[1]

Plaintiffs, Pelham Realty Corp. and Modelle Scism, are the owners of a 116-acre tract of land which is situated in the northwestern corner of Caswell County near the boundary between North Carolina and Virginia. Plaintiffs' property is bounded on the west by U.S. Highway 29 and on the east it is bounded by the Southern Railway. State Road 1353[2] runs parallel to and on the

---

 1. In *Department of Transportation v. Pelham Realty Corporation,* the Department of Transportation (hereinafter referred to as "the Department") initiated proceedings to condemn plaintiffs' land. In *Pelham Realty Corporation v. Board of Transportation,* plaintiffs sought to enjoin such taking by the state. It has been agreed and stipulated by the parties that the record in the latter case will serve as the proper basis for decision on both cases.

 2. U.S. Highway 29 was relocated to the west of plaintiffs' property in 1951 or 1952. The highway which previously bore that designation then became identified as State Road 1353.

east side of the railroad. Vulcan Materials Company (Vulcan) owns a large tract of land which is adjacent to and north of plaintiffs' property. The Vulcan property lies between that of plaintiffs and the Virginia state line. It also extends a significant distance into Virginia.

From the time of its relocation in the early 1950's, and until its upgrading in the middle or late 1970's, U.S. 29 was a two-lane, undivided highway, with unlimited access, which crossed the northwestern corner of Caswell County and extended on to Danville, Virginia. Traffic over the highway has steadily increased, and, during the last decade, the Department and its predecessor agencies engaged in an ongoing process to redesign and rebuild the thoroughfare from the town of Ruffin in Rockingham County to the boundary between North Carolina and Virginia. The result of this process was a decision to upgrade the facility by making it a four-lane, limited access highway. The proposed design contemplated two roadways twenty-four feet wide separated by a median no less than 68 feet wide.

At and before the time these actions were instituted, Vulcan operated a quarry on its property. It had several means of access to its land with three access roads leading from the property to U.S. 29. Formerly, there was also an access road to State Road 1353 which crossed the Southern Railway tracks by way of a wooden bridge constructed and maintained by the railroad. The bridge had been closed by the railroad because of its unsafe condition. In addition, there was an access road which led northward and entered onto a public highway in Virginia.

The plans for the improvement of U.S. 29 envisioned the need for the acquisition of eighteen acres of land belonging to Vulcan. Such an acquisition would result in the company being denied its previously unlimited access to the highway. The only access which would remain would be that provided by the public road in Virginia.

On 29 September 1976, Vulcan made a formal request to the Department for an access road to nearby N.C. Highway 700[3] or, in the alternative, an on-grade crossing over the railroad. Several

---

3. N.C. Highway 700 is located south of plaintiffs' property and runs generally east and west. It has access to the improved U.S. 29.

feasibility studies were made concerning Vulcan's access to its property. The Department ultimately concluded that the best approach would be the construction of a paved access road leading to the Vulcan tract adjacent to the west side of and paralleling the Southern Railway. This new road would be approximately four-tenths of a mile east of U.S. 29. The access road would extend from Vulcan's property on the north to Highway 700 on the south. In return for the construction of a paved service road, Vulcan agreed to sell 18.21 acres of land and all of its rights of access to Highway 29 for $31,000.00. The service road was to traverse the property of several landowners, including that of plaintiffs. Therefore, it became necessary for the Department to acquire the needed right-of-way in some appropriate fashion.

On 12 January 1979, construction of the service road was authorized by a resolution of the Board of Transportation. A contract for the construction of the road was subsequently let for a total price of $174,464.00. The contract called for a completion date of 30 November 1979.

On 29 May 1979, the Department filed a complaint and declaration of taking for the purpose of acquiring the land necessary for the construction of the access road. Later that same day, plaintiffs filed an independent lawsuit against the Department seeking a permanent injunction against the construction of the access road. Plaintiffs alleged that the acquisition of a right-of-way over this land would not serve a valid public purpose.

The matter came on for hearing on 1 August 1979 before Judge Long who denied plaintiffs' motion for a preliminary injunction. At a hearing on 8 November 1979, Judge Long denied plaintiffs' request for a permanent injunction.[4] On 30 November 1979, the day upon which the road was completed, the judge signed an order denying plaintiffs relief. Plaintiffs appealed.

In an opinion by Judge Wells, concurred in by Judges Vaughn and Martin (Robert M.), the Court of Appeals reversed the judgment of the trial court and remanded the case for the entry of an order permanently enjoining the taking of plaintiffs' property. The panel held that the road in question did not meet

---

4. By stipulation of the parties, all of the evidence received at the hearing on 1 August was admissible at the hearing on 8 November.

the statutory definition of a frontage road and that the road served a private purpose rather than a public purpose.

We granted the Department's petition for discretionary review pursuant to G.S. § 7A-31 (1969), on 4 March 1981.

*Attorney General Rufus L. Edmisten, by Assistant Attorney General Charles M. Hensey, for the North Carolina Department of Transportation, appellant.*

*Tuggle, Duggins, Meschan, Thornton & Elrod, P.A., by David F. Meschan, for appellees.*

BRITT, Justice.

## I.

After finding numerous facts, Judge Long made three conclusions of law: First, the Department has the authority, pursuant to G.S. § 136-89.55, to construct such service roads as in its opinion are necessary or desirable; second, the right-of-way which the Department seeks to acquire from plaintiffs is for a public road; and, third, the Department's exercise of its powers of condemnation in this case is for a public purpose. Each of these conclusions is pertinent to a proper resolution of the case *sub judice.* However, two preliminary considerations must be addressed first if the substantive issues of the case are to be answered: First, the procedural posture of the litigation; and, second, the propriety of the remedy of an injunction in a condemnation proceeding.

## A.

Article 9 of Chapter 136 of the General Statutes governs the Department's exercise of its powers of eminent domain. *See generally* G.S. §§ 136-103 to -121.1 (1981). Specifically, G.S. §§ 136-103 (1981), provides that in the event that condemnation becomes necessary, the Department shall institute a civil action in the superior court of any county in which the land in question is located. Such an action is commenced by the filing of a complaint,[5]

---

5. The complaint shall contain or have attached thereto the following:

(1) A statement of the authority under which and the public use for which said land is taken.

as well as a declaration of taking which declares that such land, easement or interest is taken for the use of the Department of Transportation.[6] The filing of the complaint and the notice of taking must be accompanied by the deposit of the sum of money which the Department estimates to be just compensation for the taking in question. Upon the filing of the complaint, the declaration of taking, and the deposit of estimated compensation, title to the land or other interest in question, as well as the right to immediate possession vests in the Department. G.S. § 136-104 (1981); *see generally State v. Johnson*, 278 N.C. 126, 179 S.E. 2d 371 (1971); *State Highway Comm'n v. Myers*, 270 N.C. 258, 154 S.E. 2d 87 (1967). The judge of the court in which the action is filed must enter such orders as are required to place the Department in immediate possession. G.S. § 136-104 (1981). Such land or interest is deemed to be condemned and taken for the use of the Department as of the time of filing. *Id.* Any person named in and served with a complaint and a declaration of taking has twelve months from the date of service to answer. G.S. § 136-107 (1981).[7] Such persons

---

(2) A description of the entire tract or tracts affected by said taking sufficient for the identification thereof.

(3) A statement of the estate or interest in said land taken for public use and a description of the area taken sufficient for the identification thereof.

(4) The names and addresses of those persons who the Department of Transportation is informed and believes may have or claim to have an interest in said lands, so far as the same can by reasonable diligence be ascertained and if any such persons are infants, non compos mentis, under any other disability, or their whereabouts or names unknown, it must be so stated.

(5) A statement as to such liens or other encumbrances as the Department of Transportation is informed and believes are encumbrances upon said real estate and can by reasonable diligence be ascertained.

(6) A prayer that there be a determination of just compensation in accordance with the provisions of this Article.

G.S. § 136-103 (1981).

6. The declaration shall contain or have attached thereto the information required by subsections 1 through 4 of footnote 5, as well as a statement of the sum of money which the Department of Transportation estimates to be just compensation for the taking in question.

7. The courts have no discretionary power to allow an extension of time for the filing of an answer under G.S. § 136-107 (1981). *State Highway Comm'n v. Hemphill*, 269 N.C. 535, 153 S.E. 2d 22 (1967).

may also apply to the court for disbursement of the money deposited in the court, or any part thereof, as full compensation, or as a credit against just compensation without prejudice to any further proceedings to determine just compensation. G.S. § 136-105 (1981)

In the present case, there is no dispute that the Department has complied with the relevant statutory provisions concerning the procedure that is to be employed in condemnation proceedings.[8] On 28 May 1979, the Department filed its complaint and declaration of taking with the Caswell County Clerk of Superior Court. The Department also deposited the sum of $19,800.00 with the court, that amount being its estimate of fair compensation. Plaintiffs were informed by letters dated 23 May 1979 of the Department's intention to file suit.

[1] Plaintiffs have never answered the complaint filed by the Department. Ordinarily, that failure would subject them to the entry of default. *See* G.S. § 1A-1, Rule 55 (1969). However, later in the day on 28 May 1979, plaintiffs filed an independent lawsuit in which they sought a permanent injunction against the proposed taking. The Department filed answer to that action on 17 August 1979.

Plaintiffs' failure to answer the condemnation proceeding filed by the Department is not a fatal defect. The parties have entered into several stipulations to chart the progress of the litigation. Not only have the parties stipulated to having the cause heard out of county and out of term by Judge Long, they have also agreed that the evidence submitted at the hearing on the motion for a preliminary injunction would be admissible at the subsequent hearing on the motion for a permanent injunction. Furthermore, the parties have stipulated that the court ruling concerning plaintiffs' independent action would be applicable to the Department's condemnation action and that the ruling would resolve the issues in the condemnation action concerning public use and public purpose.

Stipulations are viewed favorably by the courts because their usage tends to simplify, shorten, or settle litigation as well as

---

8. The documents filed by the Department comport with the requirements of G.S. § 136-103 (1981).

save costs to litigants. *Outer Banks Contractors, Inc. v. Forbes,* 302 N.C. 599, 276 S.E. 2d 375 (1981); *Rickert v. Rickert,* 282 N.C. 373, 193 S.E. 2d 79 (1972); *Rural Plumbing and Heating, Inc. v. H. C. Jones Construction Co.,* 268 N.C. 23, 149 S.E. 2d 625 (1966). The stipulations which the parties have entered into have had their desired effect. The duplication of evidence, as well as the repetition of trial proceedings, has been avoided. The entire course of the litigation has been expedited by the cooperative efforts of the litigants and their counsel. While a court has no authority to alter the requirements of G.S. § 136-107, we perceive no reason why parties may not make reasonable stipulations concerning matters to which the statute is addressed. In any event, the rights of neither party have been violated or prejudiced by plaintiffs' failure to file answer. It is clear that there has been a complete and spirited adversary proceeding throughout the course of these proceedings.[9]

## B.

[2]  In their complaint, plaintiffs prayed for the entry of a permanent injunction which would enjoin the Department "from acquiring or constructing the contemplated right-of-way" through the property in question. On 1 August 1979, the case came on for hearing on plaintiffs' motion for a preliminary injunction. The motion was denied. On 8 November 1979, a hearing was held on plaintiffs' motion for a permanent injunction. Again, the court denied plaintiffs relief. The Court of Appeals reversed,[10] and it remanded the cause for entry of an order permanently enjoining the taking of plaintiffs' property for the project. The Court of Appeals was in error by so ordering.

It is fundamental that an injunction is an equitable remedy. *Lane Trucking Co. Haponski,* 260 N.C. 514, 133 S.E. 2d 192 (1963);

---

9. We would pause to note that the parties concluded one additional stipulation at the trial level which is significant. On 6 September 1979, the Department stipulated that plaintiffs could withdraw the sum deposited as its estimate of just compensation without prejudice to its right to contest the issues of the public purpose or the public use of the taking.

10. The Court of Appeals grounded its decision upon its conclusion that the evidence before the trial court failed to establish that the proposed road met the statutory definition of a frontage road or that it was constructed to provide access where all other access has been denied. Those principles will be dealt with in a subsequent section of our opinion.

*see generally* D. Dobbs, *Handbook on the Law of Remedies* § 2.10 (1973). It follows, therefore, that where there is a full, complete, and adequate remedy at law, the equitable remedy of injunction will not lie. *E.g., City of Durham v. Public Service Company of North Carolina, Inc.,* 257 N.C. 546, 126 S.E. 2d 315 (1962). This court has relied upon these fundamental principles to hold that an injunction will not lie to restrain the state from maintaining condemnation proceedings on the ground that it was without authority to condemn the land since the ground of objection is one which the landowner may assert as a defense in the condemnation proceeding itself. *State Highway Comm'n v. Thornton,* 271 N.C. 227, 156 S.E. 2d 248 (1967); *see generally City of Reidsville v. Slade,* 224 N.C. 48, 29 S.E. 2d 215 (1944). We are of the opinion that *Thornton* controls the case *sub judice.*

*Thornton* was a case in which the State Highway Commission sought to condemn a right-of-way across a tract of land owned by the defendants. The Commission proposed to construct an access road as a component of a larger highway project. The proceeding was commenced on 1 October 1965 by the issuance of a summons, the filing of a complaint, the filing of a declaration of taking, and the deposit of the estimated compensation due the defendants for the taking of their property. On 6 October 1965, the state began construction. Not until 22 July 1966, when the road was virtually completed, did defendants file their answer.[10a] Defendants contended that the taking was not for a public purpose, and they sought the entry of a permanent injunction enjoining the condemnation of their land. Upon receiving evidence and making findings of fact, the court concluded that the taking of defendants' land was not for a public purpose, and it entered judgment permanently enjoining the state from appropriating defendants' land. On appeal, this court reversed the judgment of the trial court, and it remanded the cause for the determination of appropriate compensation. Writing for the majority, Justice Lake observed that the defendants could have derived no benefit from the entry of an injunction which they would not have gained by the entry of a judgment dismissing the condemnation proceeding. Such is the case here.

In their independent action in which they sought the entry of a permanent injunction restraining the taking of their land, plain-

___

10a. During oral arguments in the case at hand attorneys for the parties admitted that construction of the road in question has been completed.

tiffs alleged that the project did not serve a public purpose. In view of the stipulations that allegation constitutes a substantive ground of defense to the Department's condemnation action. It follows, therefore, that the plaintiffs were able to establish the absence of a public purpose, the appropriate remedy would be the dismissal of the condemnation suit brought by the Department, not the entry of a permanent injunction. We therefore hold that the Court of Appeals erred in ordering that the cause be remanded for entry of a permanent injunction.

## II.

Having resolved the procedural and remedial issues[11] posed by the case *sub judice*, we now direct our attention to the substantive issues which have been preserved for our review: whether the Department's action in proceeding to condemn plaintiffs' property was authorized, and assuming that it was authorized, whether that action was for a public purpose. We answer both questions in the affirmative.

## A.

[3]  G.S. § 136-89.55 (1981), provides, in pertinent part, that

In connection with the development of any controlled-access facility the Department of Transportation is authorized to plan, designate, establish, use, regulate, alter, improve, maintain, and vacate local service or frontage roads and streets or to designate as local service or frontage roads and streets any existing road or street, and to exercise jurisdiction over service or frontage roads in the same manner as is authorized over controlled-access facilities under the terms of this Article, if in its opinion such local service or frontage roads and streets are necessary or desirable; . . . .

G.S. § 136-89.49(3) (1981), defines a frontage road as being "a way, a road or a street which is auxiliary to and located on the

---

11. In their prayer for relief, plaintiffs sought the entry of a permanent injunction enjoining the action of the Department. We have held above that the entry of a permanent injunction would be an inappropriate remedy. However, that does not mean that our consideration of the substantive issues posed herein is foreclosed. Plaintiffs' prayer for relief and the particular remedy which it seeks does not control the relief that a court may grant under appropriate circumstances. *See State Highway Comm'n v. Thornton, supra.*

side of another highway, road or street for service to abutting property and adjacent areas and for the control of access to such other highway, road or street." The Court of Appeals concluded that the road about which the present litigation is concerned is not a frontage road under the language of the statutory definition. *Pelham Realty Corp. v. Board of Transportation,* 50 N.C. App. at 108, 272 S.E. 2d at 778. We agree with that conclusion. The right-of-way which the Department seeks to obtain from plaintiffs is located a substantial distance from the expressway now under construction. To so hold, however, does not necessarily resolve the case before us in favor of plaintiffs.

It is well-established that the intent of the legislature controls the interpretation of a statute. *E.g., State v. Hart,* 287 N.C. 76, 213 S.E. 2d 291 (1975); *State v. Johnson,* 278 N.C. 126, 179 S.E. 2d 371 (1971); *Underwood v. Howland,* 274 N.C. 473, 164 S.E. 2d 2 (1968). Statutes which deal with the same subject matter must be construed *in pari materia, e.g., Shaw v. Baxley,* 270 N.C. 740, 155 S.E. 2d 256 (1967); *Becker County Sand and Gravel Co. v. Taylor,* 269 N.C. 617, 153 S.E. 2d 19 (1967); *Hobbs v. County of Moore,* 267 N.C. 665, 149 S.E. 2d 1 (1966), and harmonized, if possible, to give effect to each. *E.g., Jackson v. Guilford County Bd. of Adjustment,* 275 N.C. 166, 155 S.E. 2d 78 (1969).

It is within the power of the legislature to define a word used in a statute, *Vogel v. Reed Supply Co.,* 277 N.C. 119, 177 S.E. 2d 273 (1970), and that statutory definition controls the interpretation of that statute. *Martin v. Glenwood Park Sanatorium,* 200 N.C. 221, 156 S.E. 849 (1931). However, where the words of a statute have not acquired a technical meaning, they must be construed in accordance with their common and ordinary meaning unless a different meaning is apparent or indicated by the context. *E.g., Lafayette Transportation Service, Inc. v. County of Robeson,* 283 N.C. 494, 196 S.E. 2d 770 (1973).

The term "service road" is not defined by statute, nor is its meaning controlled by the statutory definition of the term "frontage road." It is therefore appropriate to apply a common sense construction to the term. It is manifest that the construction of a limited access highway necessarily involves the disruption of existing traffic patterns as well as access to parcels of property. The proposed project across plaintiffs' property would serve to

alleviate such disruption. The evidence in the present case tends to show that Vulcan will be denied access to its property by way of Highway 29 as a result of the upgrading of its status. While it is true that the Department could have sought to procure a right-of-way adjacent to the expressway rather than some distance away as it has done, it was not required to do so. In the absence of an abuse of discretion, the Department of Transportation has broad authority over the design and construction of proposed highways. *State Highway Comm'n v. Greensboro City Bd. of Education*, 265 N.C. 35, 143 S.E. 2d 87 (1965); *Cameron v. State Highway Comm'n*, 188 N.C. 84, 123 S.E. 465 (1924); *Road Comm'n of Edgecombe v. State Highway Comm'n*, 185 N.C. 56, 115 S.E. 886 (1923). In the exercise of its authority, the Department may conclude that a frontage road may not be feasibly constructed. Such factors as comparative cost, the use to which the proposed road will be put, and the peculiarities of the local topography ought to be weighed in assessing such decision.

We perceive no abuse of discretion by the Department in the case at hand. Beginning in the fall of 1976, the Department began considering the feasibility of constructing a road which would provide access to the Vulcan tract. The Department concluded that it was not practical to provide access across the right-of-way belonging to Southern Railway because the construction cost of adequate structures across the property alone would amount to $140,000 and the design speed for them would make their usage by the general public hazardous. The Department further concluded that grade crossings of the railroad tracks would be hazardous to vehicular traffic, as well as to trains passing over the tracks. The Department rejected the construction of a frontage road along Highway 29 because the topography along the proposed route would have caused the project to cost over $140,000. On the other hand, a road adjacent to the railroad right-of-way would have incurred construction costs of approximately $60,000.00. The cost differential among the proposals is apparent. In addition, the construction of the road in question would yield substantial savings in right-of-way costs for the overall project. The evidence showed that lack of an adequate access road would result in substantial losses of value to the parcels affected by the overall project. Such losses are compensable to the owners. We conclude, therefore, that plaintiffs have failed to establish that the Depart-

ment abused its discretion in selecting the route adjacent to the railroad right-of-way as a means of access to the Vulcan property.

B.

[4]  Since the other issues which are posed by the present case have been resolved adversely to plaintiffs' position, the outcome of this dispute ultimately turns upon the nature of the proposed project. After careful deliberation, we conclude that there is competent evidence in the record to support Judge Long's conclusion of law that the Department's exercise of its power of condemnation was for a public purpose. Accordingly, we reverse the judgment of the Court of Appeals.

It is fundamental that private property may be taken by the state under its powers of eminent domain only for a public purpose. *E.g., State Highway Comm'n v. Farm Equipment Co.,* 281 N.C. 459, 189 S.E. 2d 272 (1972); *State Highway Comm'n v. Asheville School, Inc.,* 276 N.C. 556, 173 S.E. 2d 909 (1970); *Vance County v. Royster,* 271 N.C. 53, 155 S.E. 2d 790 (1967). However, the state's exercise of its power of eminent domain for a public purpose which is primary and paramount will not be defeated by the fact that a private use or benefit will result which would not of itself warrant an exercise of the power. *State Highway Comm'n v. Asheville School, Inc., supra.* The question of whether property is taken for a public purpose is a question of law which is reviewable on appeal. *State Highway Comm'n v. Batts,* 265 N.C. 346, 144 S.E. 2d 126 (1965); *City of Charlotte v. Heath,* 226 N.C. 750, 40 S.E. 2d 600 (1946).

It will be recalled that before Highway 29 was upgraded to a multi-laned, limited access highway, Vulcan had access to its quarry at three points along the road. The upgrading of the thoroughfare resulted in these points of access no longer being available for Vulcan's use. The Department's action effectively denied the company access to its property from a North Carolina road. To the south of the quarry and its contiguous land lies the land owned by plaintiffs. Vulcan has no right to traverse that area in order to utilize its own parcel. To the east of Vulcan's property is the right-of-way owned by the Southern Railway. At one time, Vulcan had been able to cross the railroad's property by way of a wooden bridge constructed and maintained by the railway. However, the bridge had been closed by the railroad

because of its hazardous condition. It is, therefore, apparent that upon completion of the Highway 29 project, Vulcan would have no right of access to its property in North Carolina. While it may be true that Vulcan does have access to its quarry from Virginia, that is not determinative of the issue before us. North Carolina has no authority over the Commonwealth of Virginia or its political subdivisions. These entities are free to continue to provide this access in the future. However, they are also free to restrict or deny this access in accordance with their own established procedures. In other words, the fact that Vulcan may have continued access to its property through the Commonwealth of Virginia is irrelevant. Due to the action of an agency of the State of North Carolina, Vulcan will be denied access to its property through this state unless some alternative access is provided. It is within the power and responsibility of the state to so provide. *State Highway Comm'n v. Asheville School, Inc., supra,* is illustrative of this principle.

In *Asheville School,* the state sought to condemn a tract of land belonging to the defendant so that it could provide access to a 1.5 acre tract belonging to one C. A. Mashburn. In the process of constructing a portion of Interstate 40 through Asheville, the state was required to relocate a segment of a secondary road to which the Mashburn tract previously had access. On one side, the tract was bounded by the right-of-way for the Interstate. On all other sides, the tract was bordered by property belonging to the defendant. The Mashburn tract had no right of access to any public road. To alleviate that problem, the state sought to condemn .074 acres belonging to the defendant in order to construct a driveway leading to the Mashburn residence. The defendant resisted the taking and argued that the road served a private use only. Speaking for a unanimous court, Justice (later Chief Justice) Sharp held that while the proposed roadway would benefit a private purpose, its construction was auxiliary to and necessitated by the construction of a comprehensive highway project. Therefore, it was within the power of the state to exercise its powers of eminent domain to secure property for the roadway's construction. 276 N.C. at 562-63, 173 S.E. 2d at 914; *compare Andrews v. State of Indiana,* 248 Ind. 525, 229 N.E. 2d 806 (1967); *Luke v. Massachusetts Turnpike Authority,* 337 Mass. 304, 149 N.E. 2d 225 (1958).

In the case *sub judice*, as a result of the action of the Department of Transportation in upgrading Highway 29 from a two-lane road with unlimited access to a multi-lane, limited access expressway, Vulcan will be denied access to its property in North Carolina. It is effectively landlocked because it is bounded on the west by the expressway, on the north by an independent sovereignty, and on the south and east by private property. Furthermore, while Vulcan and its employees will be the primary users of the road in question, the thoroughfare will also provide access to property to the south of the quarry, including that of plaintiffs. To that extent, the proposed access road will serve the public interest to a greater extent than was the case in *Asheville School* where the only usage which was reasonably contemplated was concerned with but one parcel of land.[12]

For the reasons stated above, the decisions of the Court of Appeals are reversed and the judgment of the trial court will be reinstated. This cause will be remanded to the trial court for further proceedings consistent with this opinion.

Reversed and remanded.

---

12. Plaintiffs' reliance upon *State Highway Comm'n v. Batts, supra,* is misplaced. In *Batts,* the state sought to condemn land in order to construct a road designed to serve five farm properties upon which four houses were located. All of the occupants of the houses were members of the Batts family. The road in question was to begin at the boundary of another secondary road and run 3,316 feet to a dead end. This court held that the proposed road would serve only a private purpose and proscribed the condemnation. In the case *sub judice,* while it is true that the proposed access road is part of the contract concluded between the state and Vulcan and will be primarily used in connection with Vulcan's operations, it is an incidental component of a larger project serving the public interest. *Compare State Highway Comm'n v. Thornton, supra.*