COUNTRYWIDE HOME LOANS, INC., PLAINTIFF v. BANK ONE, N.A., AS TRUSTEE, AND PRIORITY TRUSTEE SERVICES OF NC, L.L.C., AS SUBSTITUTE TRUSTEE, DEFENDANTS

No. COA07-1137

(Filed 20 May 2008)

**1. Mortgages and Deed of Trust— equitable estoppel—payoff statement—latent error**

The trial court properly concluded that the doctrine of equitable estoppel applied to an action involving the cancellation of a mortgage from defendant when the property was transferred and a new mortgage was issued from plaintiff. The attorney who conducted the closing knew that the payoff statement did not account for a few weeks of accrued interest, but did not know and had no way of knowing that the payoff amount included a latent error.

**2. Mortgages and Deed of Trust— incorrect payoff statement—court-ordered cancellation**

The trial court did not err by ordering the cancellation of defendant's deed of trust where an incorrect payoff statement

COUNTRYWIDE HOME LOANS, INC. v. BANK ONE, N.A.

[190 N.C. App. 586 (2008)]

was issued when the property was sold and a new deed of trust was issued by plaintiff. Plaintiff agreed to loan the purchase money with the expectation that it would have the only lien on the property and will be prejudiced if defendant is allowed to continue to enforce the lien against the property.

Appeal by Defendants from judgment entered 10 April 2007 by Judge Nathaniel J. Poovey in Iredell County Superior Court. Heard in the Court of Appeals 5 March 2008.

*Roberson Haworth & Reese, P.L.L.C., by Alan B. Powell and Christopher C. Finan, for Plaintiff-Appellee.*

*Morris, Schneider, Prior, Johnson & Freedman, L.L.C., by David O'Quinn, for Defendants-Appellants.*

STEPHENS, Judge.

Countrywide Home Loans, Inc. ("Countrywide") commenced this action by filing a complaint on 11 February 2005 seeking to quiet title to a parcel of real property and to stay foreclosure proceedings instituted by Bank One, N.A. ("Bank One") and Priority Trustee Services of NC, L.L.C. ("PTS") (collectively, "Defendants") against the property. Defendants answered the complaint twenty-seven days later. The case was tried before a judge, sitting without a jury, at the 19 February 2007 session of Iredell County Superior Court. In a judgment entered 10 April 2007, the trial court ordered Defendants to cancel the deed of trust on which they were foreclosing. Defendants appeal.

When the trial court sits without a jury, as it did in this case, "the standard of review on appeal is whether there was competent evidence to support the trial court's findings of fact and whether its conclusions of law were proper in light of such facts." *Shear v. Stevens Bldg. Co.*, 107 N.C. App. 154, 160, 418 S.E.2d 841, 845 (1992). The trial court's conclusions of law are reviewed *de novo. Humphries v. City of Jacksonville*, 300 N.C. 186, 265 S.E.2d 189 (1980). In the case at bar, the trial court's judgment included thirty-four findings of fact. Defendants assigned error to only two of those findings, and, thus, the unchallenged findings are presumed to be supported by competent evidence. *Koufman v. Koufman*, 330 N.C. 93, 408 S.E.2d 729 (1991). Additionally, Defendants concede in their brief that one of the findings to which they assigned error is supported by competent evidence. The supported findings establish the following facts:

Michael and Sonia Friedman ("the Friedmans") owned property encumbered by a deed of trust held by Bank One and recorded in the Office of Iredell County's Register of Deeds. The Friedmans defaulted on the note secured by the deed of trust, and Bank One, through its servicer, Homecomings Financial Network, Inc. ("Homecomings"), referred the loan to PTS to commence foreclosure proceedings. PTS engaged the law firm of Morris, Schneider & Prior, LLC ("MS&P"), to assist with the foreclosure.

On or about 6 November 2001, the Friedmans entered into a contract to sell the property to their daughter, Melissa Friedman, who obtained a purchase money loan from Countrywide to purchase the property. Countrywide intended to pay off and satisfy the note secured by Bank One's deed of trust so that Countrywide would have a first-priority lien against the property.

Attorney Robert Forquer ("Mr. Forquer") was engaged to close the loan, and the closing was scheduled for 8 December 2001. On 12 November 2001, an employee of MS&P sent Mr. Forquer a letter which stated that it was "an attempt to collect a debt" owing on the property, *i.e.*, the money due under the note. The letter stated that the amount necessary to pay off the loan in full was $426,314.28 and that this amount "MUST be in [MS&P's] office on or before November 30, 2001[.]" The letter was generated without involvement from Countrywide or Mr. Forquer. The letter indicated that interest in the amount of $7,443.96 would accrue on the outstanding principal balance through 30 November 2001. This figure was "short" $100,000.00 and, thus, so too was the total amount necessary to pay off the loan in full.[1]

A few days before the scheduled closing, Mr. Forquer arranged for attorney Victoria Sprouse ("Ms. Sprouse") to close the loan. Mr. Forquer delivered his closing file, including the letter from MS&P,[2] to Ms. Sprouse on or about 7 December 2001. After reviewing the file, Ms. Sprouse contacted Mr. Forquer in an effort to obtain an updated payoff amount. Mr. Forquer told Ms. Sprouse to obtain an updated amount directly from MS&P. Ms. Sprouse tried to contact MS&P numerous times on 7 December 2001 at both its Atlanta and Raleigh

---

1. From the evidence in the record on appeal, it is apparent that MS&P generated its letter exclusively from figures included on a payoff statement provided to MS&P from Homecomings. The Homecomings statement contains an obvious mathematical error in the amount of $100,000.00.

2. Nothing in the record suggests that Mr. Forquer or Ms. Sprouse ever had access to the Homecomings statement.

offices. Ms. Sprouse "finally" was able "to speak with someone at MS&P on Friday, December 7, 2001[,] regarding the payoff . . . . The representative from MS&P indicated to Ms. Sprouse that if there was a problem with the payoff amount . . . MS&P would inform her of any such problem on Monday, December 10, 2001[,] prior to disbursement." Ms. Sprouse closed the loan on 8 December 2001.

At the closing, "Mr. Friedman was adamant that the amount shown on [MS&P's letter] was too high, the correct amount being in the $300,000.00 range." Ms. Sprouse left a voicemail message with MS&P on 10 December 2001 in an attempt to obtain both an updated payoff amount and an itemized list of payoff charges. "Upon failing to receive any word from MS&P," Ms. Sprouse disbursed checks to all parties entitled to receive funds from the closing transaction. Ms. Sprouse disbursed more than $100,000.00 to the Friedmans as proceeds from the sale. Ms. Sprouse overnighted a check which stated that it was for "Payoff of First Mortgage" to MS&P in the amount of $431,314.28, five thousand dollars more than the letter's payoff amount. Ms. Sprouse included the extra money in an effort to estimate the amount of interest which would accrue on the loan between 30 November 2001 and the date on which MS&P would receive the funds. With the check, Ms. Sprouse sent MS&P a "Mortgage Payoff Letter" which referenced the loan number, the amount of the check, and the "book and page" of the recorded deed of trust and specifically requested cancellation of Bank One's deed of trust.

MS&P received the check and letter on 11 December 2001 and deposited the check into one of its accounts. The check "cleared the bank on December 13, 2001." The additional $5,000.00 which Ms. Sprouse added to cover accrued interest was "more than sufficient" to account for interest which had accrued between 30 November 2001 and 13 December 2001.[3] MS&P forwarded the funds to Bank One. On 14 December 2001, Countrywide's deed of trust securing its loan to Melissa Friedman was recorded in the Office of the Register of Deeds. Four to six weeks after Ms. Sprouse disbursed all funds, MS&P notified Ms. Sprouse of the error in the payoff letter. Defendants did not cancel the Bank One deed of trust, and Countrywide filed its complaint.

The trial court concluded that, under the doctrines of both equitable estoppel and quasi-estoppel, Defendants were prevented from

---

3. Based on the payoff statement generated by Homecomings, the additional $5,000.00 was also sufficient to account for interest accruing between 1 December 2001 and 31 December 2001.

further enforcing the Bank One deed of trust. The primary issues presented by this appeal are whether the trial court erred in reaching these conclusions.

---

"An action [to quiet title] may be brought by any person against another who claims an estate or interest in real property adverse to him for the purpose of determining such adverse claims[.]" N.C. Gen. Stat. § 41-10 (2001).

> In order to establish a *prima facie* case for removing a cloud on title, a plaintiff must meet two requirements: (1) plaintiff must own the land in controversy, or have some estate or interest in it; and (2) defendant must assert some claim in the land which is adverse to plaintiff's title, estate or interest.

*Chicago Title Ins. Co. v. Wetherington,* 127 N.C. App. 457, 461, 490 S.E.2d 593, 597 (1997) (citing *Wells v. Clayton,* 236 N.C. 102, 107, 72 S.E.2d 16, 20 (1952)), *disc. review denied,* 347 N.C. 574, 498 S.E.2d 380 (1998).

North Carolina courts have long recognized the doctrine of equitable estoppel. Generally speaking, the doctrine applies

> when any one, by his acts, representations, or admissions, or by his silence when he ought to speak out, intentionally or through culpable negligence *induces* another to believe certain facts exist, and such other rightfully *relies and acts on* such belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts.

*State Highway Comm'n v. Thornton,* 271 N.C. 227, 240, 156 S.E.2d 248, 258 (1967) (quotation marks and citation omitted).

> In such a situation, the party whose words or conduct induced another's detrimental reliance may be estopped to deny the truth of his earlier representations in the interests of fairness to the other party. In applying the doctrine, a court must consider the conduct of both parties to determine whether each has conformed to strict standards of equity with regard to the matter at issue.

*Whitacre P'ship v. Biosignia, Inc.,* 358 N.C. 1, 17, 591 S.E.2d 870, 881 (2004) (quotation marks and citations omitted). As to the strict standards of equity which a court must consider,

the essential elements of an equitable estoppel as related to the party estopped are: (1) conduct which amounts to a false representation or concealment of material facts, or, at least, which is reasonably calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party afterwards attempts to assert; (2) intention or expectation that such conduct shall be acted upon by the other party, or conduct which at least is calculated to induce a reasonably prudent person to believe such conduct was intended or expected to be relied and acted upon; (3) knowledge, actual or constructive, of the real facts. As related to the party claiming the estoppel, they are: (1) lack of knowledge and the means of knowledge of the truth as to the facts in question; (2) reliance upon the conduct of the party sought to be estopped; and (3) action based thereon of such a character as to change his position prejudicially.

*Peek v. Wachovia Bank & Trust Co.*, 242 N.C. 1, 11-12, 86 S.E.2d 745, 753 (1955) (quoting *Hawkins v. M & J Fin. Corp.*, 238 N.C. 174, 177-78, 77 S.E.2d 669, 672 (1953) (citations omitted)).[4]

[1] Defendants argue that the trial court erred in concluding that the doctrine of equitable estoppel applied to prevent the further enforcement of the Bank One deed of trust. In support of this argument, Defendants first contend that the trial court erred in concluding "that any actions of Ms. Sprouse in the conduct of the closing transaction [] are not to be imputed to [Countrywide] such that [Countrywide] should be denied any form of equitable relief[.]" Defendants then argue that the equitable estoppel claim "died the minute [Ms.] Sprouse testified that she knew the payoff amount was incorrect." In other words, Defendants argue that Countrywide did not lack knowledge of the truth as to the facts in question. We are unpersuaded.

By virtue of its deed of trust, Countrywide owned an interest in the property. *See Skinner v. Preferred Credit*, 361 N.C. 114, 638 S.E.2d 203 (2006) (discussing trustee's and lender's interests in property encumbered by a deed a trust), *reh'g denied*, 361 N.C. 371, 643 S.E.2d 591 (2007). Similarly, by virtue of Bank One's deed of trust, Defendants asserted a claim in the property adverse to Countrywide's interest. *See* N.C. Gen. Stat. § 47-20 (2001); *Schuman*

---

4. Although inapplicable to the case at bar, North Carolina's General Statutes were amended in 2005 to provide that "[a] secured creditor that sends a payoff statement containing an understated payoff amount may not deny the accuracy of the payoff amount as against any person that reasonably and detrimentally relies upon the understated payoff amount." N.C. Gen. Stat. § 45-36.8(b) (2005).

*v. Roger Baker & Assocs., Inc.*, 70 N.C. App. 313, 315, 319 S.E.2d 308, 310 (1984) ("[T]he party winning 'the race to the court house' will have priority in title disputes.") (citation omitted). Accordingly, Countrywide established a *prima facie* case for removing a cloud on the property's title.

Assuming without deciding that Ms. Sprouse's knowledge was imputed to Countrywide, we disagree with Defendants' contention that Countrywide's equitable estoppel claim necessarily fails because Ms. Sprouse knew that the payoff amount in the payoff letter was incorrect. Defendants' argument ignores the specific error in the payoff letter of which Ms. Sprouse had knowledge. Ms. Sprouse only knew that the amount of interest shown on the letter did not include interest accruing between 30 November 2001 and the date on which MS&P would receive the funds. It is undisputed that Ms. Sprouse did not know and had no way of knowing that the payoff amount included in the MS&P letter contained a latent $100,000.00 error. Ms. Sprouse's knowledge that the payoff statement did not account for a few weeks of accrued interest does not defeat Countrywide's equitable estoppel claim.

Moreover, we disagree with Defendants' contention that the trial court erred in admitting the testimony of another real estate attorney concerning the reasonableness of Ms. Sprouse's actions in closing the transaction. Ms. Sprouse contacted MS&P both before and after the closing in an effort to verify the accuracy of the payoff amount, and MS&P directly and tacitly acknowledged that the payoff amount was correct. Ms. Sprouse also added $5,000.00 to the payoff letter's payoff amount in an effort to account for accrued interest. An attorney, accepted by the court as an expert in residential real property closings in and around Iredell County, testified that these actions were reasonable. Because "[a]n essential element of [equitable estoppel] is *reasonable* reliance[,]" *Adkins v. Adkins*, 82 N.C. App. 289, 291, 346 S.E.2d 220, 221 (1986) (emphasis added) (citation omitted), this evidence was properly received. Furthermore, we agree with the trial court that Ms. Sprouse's actions were reasonable. As Defendants present no other argument concerning the application of the doctrine of equitable estoppel, we hold that the trial court properly concluded that the doctrine applies to this case.

[2] Next, Defendants argue that the trial court erred in ordering the cancellation of Bank One's deed of trust because the proper remedy in this case is the subordination of Bank One's deed of trust to Countrywide's deed of trust. Again, we disagree. Countrywide agreed

to loan Melissa Friedman money with the expectation that it would have the only lien on her property. This expectation was induced by Defendants' representation that the amount due under the note secured by Bank One's deed of trust was $426,314.28. Countrywide's expectations will not be met if the Bank One deed of trust is subordinated to Countrywide's lien, and Countrywide, therefore, will be prejudiced if Bank One is allowed to continue to enforce the lien against the property. We agree with the trial court that Bank One's deed of trust should be cancelled.

In light of our holding that the trial court properly applied the doctrine of equitable estoppel and ordered the cancellation of Bank One's deed of trust, we need not address Defendants' additional contention that the trial court improperly applied the doctrine of quasi-estoppel. The judgment of the trial court is

AFFIRMED.

Judges McGEE and TYSON concur.